## LAFAYETTE ET AL vs HOOD.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 853).

1. *Injunction—Temporary.*
   When merely a temporary injunction is asked for it is error to grant a perpetual injunction.
2. *Same—Motion to Dissolve.*
   When there is sufficient remedy at law a motion it is proper that the motion to dissolve a temporary injunction be sustained.
3. *Same—Demurrer.*
   It is proper that a demurrer to a petition for a temporary injunction be sustained when the remedy at law is sufficient.
4. *Same—When Bill is Bad.*
   A temporary injunction being granted and the bill showing that the remedy at law is sufficient, the complaint should be dismissed on consideration of a demurrer to the answer, because the demurrer extends back to the bad pleading first made.

Appeal from the United States Court for the Western District of the Indian Territory; before Justice Wm. R. Lawrence, December 29, 1906.

Action by William Hood by Chester A. Linebach, his guardian, against Ben F. Lafayette and another for a temporary injunction. From a decree for perpetual injunction, defendants appeal. Reversed and remanded.

*De Roos Bailey,* for appellants.

*Butts & Johnson* and *Preston C. West,* for appellee.

CLAYTON, J.   This is an action in equity, brought by the appellee, Chester A. Linebach, as guardian of his ward, William Hood, to enjoin the appellants from removing the crops from the allotted land of the ward.   Linebach was appointed guardian on the 22d day of October, 1906.   Prior to that time, to wit, on the 24th day of September, 1902, the father of the minor, Sterling P. Wood, leased to the defendant the allotted lands of his son for the term of four years, commencing January 15, 1904.   William Hood was at the time of the execution of the lease under 14 years of age.   The lease executed by the father had not been done by the direction of the court, nor had he, as the natural guardian of his ward, subjected himself to its jurisdiction, or executed a bond as required by law in a case where the child is the owner of land by a "new acquisition," as is the case here.   Some time after the execution of the lease, the defendant took possession of the land, and sublet it to his codefendant, S. S. Cox.   After the appointment of Linebach, the plaintiff, as guardian, he repudiated this lease, and brought an action before the United States Indian agent at Muskogee to be put in possession of the allotment, as provided by law, and pending the hearing of the case before the agent brought this action in equity to enjoin the removal from the premises of the crops of 1906, until the action before the agent could be heard.   The object of the suit was to hold the crops grown on the disputed premises until the agent should hear and determine the question before him; and no other relief, except general relief, was prayed.   The judge at chambers heard the application, and granted a temporary injunction.   Afterward a motion to dissolve the temporary injunction was filed, heard, and overruled.   The defendant then filed an answer, setting up the lease, and a claim for improvements, and prayed that the bill be dismissed for want of

equity, and filed with the answer a general demurrer. To the answer the plaintiff filed a general demurrer which was sustained by the court, and the defendant refusing to further plead, and standing by his answer, the court entered a decree sustaining the demurrer, dismissing the answer and cross-bill, and making the injunction perpetual. In this the court gave the plaintiff a relief not sought and determined rights not prayed for. The sustaining of the demurrer to the answer expunged the answer, and the decree was therefore founded upon the allegations of the complaint alone. The complaint only prayed that the defendants should be restrained from moving the crops until the rights of the parties should be determined by another tribunal; and this was the whole purpose of the suit.

The question of the merits of the case was not before the court further than to determine from the pleadings and the proof before it if there were a reasonable probability that the plaintiff would prevail before the Indian agent, and, if so, were there rights connected with the case that the Indian agent, as a court of law, could not protect without the aid of a court of equity. If the court should find both of these conditions to exist, then the judgment would not be a perpetual injunction, but, in accordance with the prayer of the complaint and the object of the suit, the defendant would be enjoined from removing the crops upon the premises until the plaintiff's complaint before the United States Indian agent could be heard and determined. This was the prayer of the bill. The plaintiff did not desire a perpetual injunction. His object was to tie up the crops so that they would not be severed from the land until the agent should put the defendant off and put him in possession, and then hold the growing crops by virtue of his possession. He knew if he should ask for a perpetual injunction at that time that the court of necessity would have to pass upon the whole case, and, as the plaintiff had a complete remedy at law, he could not prevail. The order of the court is as

follows: "This cause was submitted to the court upon a complaint of the plaintiff, answer, and cross-complaint, and the court having heard the matter and being sufficiently advised in the premises, it is by the court ordered, considered, adjudged, and decreed that said demurrer to the answer and cross-complaint of defendants be and the same is hereby · sustained, and the injunction heretofore granted in this cause as afterwards modified be and the same is hereby made perpetual, and it is ordered and decreed that the plaintiff have and recover of and from the defendants all of his cost in this action laid out and expended, and that he have execution therefor." This is a final decree in the case, and takes it off the docket. Suppose it shall turn out that the Indian agent finds the facts against the plaintiff, and refuses, or will refuse, to put him in possession; then what is to become of the crops? They are tied up by a perpetual injunction. The court has adjourned and thereby lost jurisdiction of the case. The defendant cannot dispose of the crops, because of the injunction. The plaintiff cannot take them, because he has lost his case at law and the door of the court is closed to both. We think this is error.

Again, the complaint, after setting out the facts of the case substantially as above stated, as the sole grounds for equitable relief, alleged the following: That the defendant Cox has raised and grown a crop thereon during the year 1906 which is now maturing and ready for harvest; that upon the appointment of plaintiff herein as guardian for the said allottee he notified the said defendants that he would expect the rental portion of the crops grown upon said premises to be turned over to him as guardian, but he is today advised that the defendants Ben Lafayette has gone to the premises above described with a force of men, and with wagons, and is proceeding to gather said crop and carry the same away from the premises in question; that, immediately upon being advised of what was taking place, the plaintiff herein, as guardian, filed complaint

against Ben Lafayette and T. S. Cox for said lands before the United States Indian agent, but is advised that said complaint cannot be heard until 10 days' notice has been given the defendant; that, unless a restraining order be granted preventing the removal of the crops from said premises, the said crops will be removed by the defendant Ben Lafayette, and, when the complainant herein gets possession of said lands, said crops will be entirely taken from said premises, and it will be almost impossible for the complainant herein to show what said crops amounted to, and what he is entitled to recover for the same; and that his remedy against the defendants herein, even if they are solvent, would be very much less efficacious than if the removal of the crops is prevented by injunctive relief."

The complaint makes no allegation of the insolvency of defendant, nor does it set up any other ground entitling the plaintiff to equitable relief, except that, if the defendant be not restrained from carrying off the crops, when plaintiff should come into possession of the land, "it will be almost impossible to show what said crops amounted to," and therefore what he would be entitled to recover in an action at law, and that his remedy would be rendered "less efficacious." Inasmuch as the value of the crops grown on the place is not the measure of damages in a suit for the recovery of land, but is either the rental or usable value of the land, we cannot see how the difficulty of being able to show the value of the crops would make a case in equity; nor can we understand how it is that, in order to make the proof of the rental or usable value of the land, the remedy in equity is more efficacious than at law. The court below, realizing that the measure of damages is as stated, dissolved the injunction as to Cox, the sublessee, and allowed him to take off his two-thirds and three-fourths, and simply tied up the property representing the rents due Lafayette as landlord. As between them, it is more than probable that the rental contract was for one-third and one-fourth of the

crops, but there was no such contract between the plaintiff and the defendant.    Indeed, there was no valid contract at all, and in the case of Indian Land & Trust Co. vs Shoenfelt et al., 79 S. W. 134, 5 Ind. Ter. 41, we have so held; that case on this question being exactly in point.    While the rule as to the measure of damages in a case of this kind is the same whether the contract calls for a part of the crop as rents or for money, still the fact that no part of the crop is contracted for only makes the reason for the rule the stronger, and still more especially is it so when there is no valid contract at all.    The action at law, then, not being for the recovery of the crop, but for the land, which carries with it damages for its wrongful use or detention, if the defendant be solvent, cannot be interfered with by a court of equity, because the plaintiff has a full, complete, and adequate remedy at law, and is entitled to his trial by jury.    If the case for the possession of the land be brought in a court of law, the damages are assessed in the same case, if before an Indian agent, or   other   tribunal   without   authority   to   assess   damages, then in an independent suit at law; and the mere fact that the seizure of the property of a defendant, or tying it up by injunction may be a more "efficacious" way of collecting a judgment than by execution, does not give a court of chancery jurisdiction, nor does the fact that a man is about to sell or remove his growing crop from premises that do not belong to him, so long as he is solvent and able to respond in damages to a judgment at law against him, give to a court of chancery the power to levy upon his property before judgment, nor does the fact that he is about to remove his crop have any tendency to "make it almost impossible for the plaintiff to show what he is entitled to recover."    As stated, the value of the crop has nothing to do with the amount of recovery.

The purpose of the bill simply being to hold intact the crops pending the proceeding before the Indian agent, and there being no allegation of insolvency alleged, or any other

allegation giving to a court of equity jurisdiction, and the case being one in which a court of law can do full and complete justice, the court in the first instance erred in ordering the injunction. Having done so, the motion to dissolve should have been sustained. That not having been done, the defendant's demurrer filed with his answer should have been sustained; but as that seems not to have been pressed by the defendant, when the plaintiff's demurrer to the answer was considered, on the principal that a bad answer is sufficient for a bad complaint, and therefore a demurrer reaches back to the first bad pleading, instead of dismissing the answer, the complaint should have been dismissed, leaving the plaintiff to his remedy at law.

For the errors above set out, the decree of the court below is reversed and remanded.

GILL, C. J., and TOWNSEND, J., concur.